## WILLIAM EVANS v. THE STATE.

### No. 1935. Decided December 14, 1898.

**1.  Embezzlement—Indictment—Motion to Quash.**

Where an indictment for embezzlement in its allegations sufficiently stated the relation of the parties, it was not error to overrule a motion to quash upon the ground that it failed to allege that the property came into the possession of defendant or was under his care by virtue of his office, agency, or employment.

**2.  Same—Evidence.**

On a trial for embezzlement it is unnecessary to prove where the party whose property (money) was embezzled had procured it, but such proof does not therefore become inadmissible. It is competent to show that such party turned over the money to defendant, and that the money he embezzled was of the same kind and denomination as had been turned over to him.

**3.  Same—Burden of Proof.**

On a trial for embezzlement of money by a carrier, where the State has shown the receipt of the money by the carrier to be carried and disposed of in a particular way, and further shows that the same was not so delivered; Held, that if it was disposed of in some other manner not criminal, the burden is upon the carrier (the defendant) to show it.

**4.  Same—Exculpatory Evidence Within Defendant's Knowledge.**

Where exculpatory evidence of an important character is peculiarly within the knowledge of a defendant it is his duty to produce it.

APPEAL from the District Court of McLennan. Tried below before Hon. SAM R. SCOTT.

Appeal from a conviction for embezzlement; penalty, imprisonment in the penitentiary for two years.

The charging part of the indictment is as follows, to wit: "In the county and State aforesaid, one William Evans was then and there a private person, and as such Nannie Stanley did intrust to and deliver to him a certain corporeal personal property then and there belonging to the said Nannie Stanley, to wit: one certain letter and envelope ad-

dressed to J. F. Mahoney, Gulf Port, Mississippi, which said letter and envelope did then and there contain two twenty-dollar bills, each then and there of the value of twenty dollars and one ten-dollar bill then and there of the value of ten dollars, all of which said bills then and there passed as current money of the United States of America; which letter and envelope containing said money as aforesaid was then and there sealed by the said Nannie Stanley, delivered and intrusted to the said William Evans, to be carried by him and registered by him at the postoffice, Waco, Texas, and the said William Evans did then and there receive the said envelope and letter, sealed and addressed as aforesaid, and containing the said money as aforesaid, of and from the said Nannie Stanley, and did then and there agree with the said Nannie Stanley and undertake to carry the said letter and envelope containing said money from the said Nannie Stanley to the postoffice, Waco, Texas, and there register the same as a registered letter as aforesaid. But the said William Evans did fail to carry and deliver and register the letter and envelope aforesaid containing said money according to his agreement and undertakings, as aforesaid, and the said William Evans did then and there, without the consent of the said Nannie Stanley, the owner thereof, fraudulently misapply, embezzle, and convert said letter and envelope and said money, as aforesaid, to the use and benefit of him, the said William Evans, against the peace and dignity of the State."

A motion was made to quash the indictment upon the following grounds, viz: 1. Because the same fails to charge any offense against the laws of Texas. 2. Because the same fails to allege that the property came into the possession of defendant or was under his care by virtue of his office, agency, or employment. Wherefore he prays judgment, and that he be discharged and go hence without day," etc.

This motion was overruled.

Miss Nannie Stanley testified: "I live in Waco, Texas. I have lived there since the spring of 1897. I came direct from Mississippi to Waco. I am a stenographer. I have known the defendant for about eight years. I knew him in Mississippi. I saw him in the month of May, 1897, during the May carnival. I was then cashier in a store in Waco. I had not seen him before for one or two years. He came by the store where I was working, and he came to me. He said he had just come from Galveston. After that he came to see me very often, and visited me quite frequently at my boarding-house. When I left Mississippi I borrowed $100 from Mr. J. F. Mahoney, Gulf Port, Mississippi. I did not expend it all, but had some $50 in the bank here. On June 17, 1897, I decided to send $50 back to Mr. Mahoney, and as the defendant was then at my house, about 3 or 4 p. m. of that date I asked him if he would register a letter for me, and he said he would. So I put $50 in bills in an envelope, and also a letter, sealed and addressed to Mr. J. F. Mahoney, Gulf Port, Mississippi. The defendant read the letter, and saw me put the bills in the envelope. He agreed to register the letter at Waco postoffice, and bring the register receipt to me immediately.

He left my boarding-house about 4 p. m. Thursday, and I did not see him for four days afterwards. I thought it strange he did not bring the receipt to me, so I went to the postoffice to inquire whether any such letter had been registered. On the following Monday, and on the same day, I met him and asked him for the receipt. He said in reply, after feeling through his pockets, that he must have left it at his boarding-house, and he would get it when he went back and bring it to me. I did not tell him I had been to the postoffice and made inquiries about it, but I told him I did not believe he had the receipt. He said he had urgent business to attend to that evening, and soon left me. The money belonged to me, and I did not give my consent for the defendant to convert the same. I then lived three blocks from the postoffice. I did not take the letter myself, because I trusted defendant and believed he would register the letter for me. I did not give him the money to pay registration fees. There was no one else present when I gave defendant the money and letter. The fifty dollars consisted of two twenty-dollar bills and one ten-dollar bill of the aggregate value of fifty dollars, and currency of the United States. I don't know of my own knowledge whether Mr. Mahoney received the $50 or not. I have since paid him $100, what I first owed him. I do not know of my own knowledge whether or not defendant sent the letter through ordinary mail or express. I do not know how much money defendant had of his own. Defendant had always been sober, and I never knew him to drink liquor. I did not at any time previous to June 17, 1897, rebuke him for using liquor. This all happened in McLennan County, State of Texas. Between the 17th day of June and the following Monday, I had not inquired for defendant."

Other witnesses testified that Miss Stanley had drawn $50 from the bank on June 17, 1897, and that defendant was visiting her on the evening of that day.

J. W. Dodson testified: "I am at present clerk in the registry department in Waco postoffice; the record I have in my hand is the one which was in use during June, 1897. There does not appear any receipt given, by an inspection of the stubs, for a letter addressed to J. F. Mahoney, Gulf Port, Mississippi, on said June 17, 1897, and sent from Miss Nannie Stanley, or from defendant, William Evans. I was not registry clerk on June 17th; Mr. Powell was then there. I only know what the book shows. The stubs only are left. When the receipt is given the clerk fills out the stub to correspond."

S. Powell testified: "In June, 1897, I was registry clerk at Waco postoffice. I have examined the registry receipt stub book, and the same does not show any letter addressed to J. F. Mahoney, Gulf Port, Mississippi, and sent by defendant or Miss Nannie Stanley, was receipted for on June 17, 1897, or during the following week. If the defendant had taken the letter to me for registration, I should have entered it upon the registry receipt book, and given him a receipt and filled out and retained the stub. Defendant did not have such a letter registered at that

time, or the books would now show it. I do not know whether the letter was mailed in the ordinary way or not. I don't know the defendant. The only reason why I know defendant did not register the letter is because the books do not show it. At times I was relieved at my post for an hour, at dinner hour, and the person in charge, upon my return, would turn over all registered letters delivered to him during my absence, and I would make proper entries of same. Mistakes are frequently made; but in registry department mistakes seldom occur. I am not now employed in postoffice. I am suspended on account of a mistake which I made."

*Samuel H. Clayton,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of embezzlement, and his punishment assessed at confinement in the penitentiary for a term of two years; hence this appeal.

Appellant made a motion to quash the indictment on the ground that it failed to allege that the property came into the possession of the defendant, or was under his care, by virtue of his office, agency, or employment. These terms of the statute were not used in the indictment, but the allegations contained in the indictment sufficiently stated the relations of the parties, and the court did not err in overruling the motion to quash.

Appellant reserved two bills of exception to the admission of testimony, but we do not think the grounds of objection alleged are tenable. True, it was not necessary for the State to have shown how Miss Nannie Stanley procured the money, but this afforded no reason why said testimony was not admissible. It was competent for the State, if it desired to do so, to show that she had the money she gave appellant to send off, and that the bills were of the same denomination which she testified she gave to him.

It is insisted that the evidence is not sufficient to support the conviction, and it is urgently contended that this case is not unlike the case of Strong v. State, 18 Texas Criminal Appeals, 19. To our minds there is a difference between that case and the one at bar, though they are in some respects similar. In the Strong case the money was received by appellant from Mrs. Caldwell, to be sent to the State Treasurer for the purpose of paying the balance due on a patent for some school land, and procuring the issuance of the same, and appellant in that case claimed to have the Treasurer's receipt for said money. On the trial the Treasurer of the State was not produced, but a clerk was introduced, with the books of the treasury department which it was claimed by the clerk contained the entry of receipts of money sent to be paid on patents for school lands; and he was permitted to state that the books of the Treasurer kept for that purpose did not show the receipt of said money.

The court in that case held that this testimony was admissible, but that it was not the best evidence, nor plenary proof, of the fact of embezzlement by appellant Strong; that the money might have been paid to the Treasurer, and he should have been produced in order to show that it was not; that the money might have been received, and not entered in the books. In this case the money was received by the appellant Evans, from Miss Stanley, in a sealed envelope, addressed to J. F. Mahoney, at Gulf Port, Miss. The defendant undertook, on his part to deliver the envelope containing said money at the postoffice in Waco, and to register said letter, taking a proper receipt therefor, and to deliver the receipt on that evening to the sender, Miss Stanley. In this case, Powell, the registry clerk at the time in the postoffice at Waco, was introduced with his book showing the stubs of registered letters sent from that office. He testified that he did not receive a letter for registration from defendant addressed as above stated, and did not register such letter; and he stated that his books did not show the registration of such a letter. Not only so, but J. W. Dodson, who was registry clerk at the time of the trial, was introduced, and he testified that the books showed the registration of no such letter. The difference between Strong's Case and this case is that in Strong's Case the Treasurer of the State, to whom the money was to be forwarded, was not produced. In this case the registry clerk at Waco, whose duty it was to register the letters at that time, was produced. We hold this to be a correct legal principle, applicable to this character of case: That when the State has shown by competent evidence the receipt of money or other property by the carrier, to be carried and disposed of in a particular way, and the State shows that it was not delivered and disposed of in the way and manner as agreed upon, and this is established beyond a reasonable doubt, if the party intrusted with the property has made some other disposition of the property, not criminal, to relieve himself of conversion he must introduce proof of such disposition. Penal Code, art. 52; Bridgers v. State, 8 Texas Crim. App., 145. We would further observe in this connection that if appellant made other disposition of the property, as sending the letter by mail, without registration, to the sendee, as suggested by counsel, this proof was peculiarly within his knowledge. Caldwell v. State, 5 Texas, 18; Ashcroft v. State, 32 Texas, 108; Leonard v. State, 7 Texas Crim. App., 417. Indeed, under the facts of this case, if he sent the money to Mahoney, in Mississippi, it was not legally possible for the State to produce said witness at the trial, nor use his deposition. Appellant, however, was authorized to take the deposition of said witness, and prove the fact of the delivery of said letter and money. Appellant, however, appears, from his own statement made to Miss Stanley, to have cut himself off from this defense, because, when confronted by her, he told her that he had the receipt for the registered letter, but did not have it with him. We are not here talking about a prima facie case, but we are discussing the question of defendant's guilt as proved beyond a reasonable doubt, and we hold that the record

authorized the jury to find that the State had made a plenary case in this regard. There being no error in the record, the judgment is affirmed.

*Affirmed.*

[NOTE.—Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]