PHILLIPS-JONES COMPANY, INC., Respondent, *v.* FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Appellant.

First Department, April 7, 1922.

Bonds — action on fidelity bond against larceny and embezzlement by employee — employee acted as selling agent for plaintiff — plaintiff warranted employee would make weekly and monthly statements and remittances, and that books would be examined by public accountant — compliance with warranties condition precedent to recovery on bond — plaintiff required to notify defendant of failure of employee to make statements and remit.

A recovery cannot be had on a fidelity bond issued to insure the plaintiff against larceny and embezzlement by an employee, a selling agent of the plaintiff in Cuba, where the plaintiff in its application for the bond expressly warranted that the employee would make weekly and monthly statements and remittances and that his books would be examined by public accountants at least once every three months, and it appears that the employee did not make weekly or monthly statements and did not make remittances, except a small remittance made nearly one year after the bond was executed; that the books of the employee were never examined by a public accountant until after the plaintiff made its claim on the bond, and that the plaintiff knew several months before the defendant was notified that the employee had violated the contract and had failed to remit a large sum of money received by him.

Compliance with the warranties was made a condition precedent to a recovery upon the bond and the defendant had the right to rely upon the good faith of the employer to require the employee to account and make remittances according to the warranty contained in the application for the bond. The plaintiff was under the duty to notify the defendant of the failure of the employee to account and remit as soon as it became aware thereof, for his retention of those funds at that time might be made the basis of the defendant's liability as, in fact, it was under the judgment appealed from, and because of the failure of the plaintiff to make such report, the defendant cannot be held liable for any larceny on the part of the employee thereafter.

APPEAL by the defendant, Fidelity and Deposit Company of Maryland, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 5th day of March, 1921, upon the verdict of a jury, and also from an order entered in said clerk's office on the 26th day of March, 1921, denying defendant's motion for a new trial made upon the minutes.

*Platt & Field* [*Eli J. Blair* of counsel], for the appellant.

*Hirsh, Newman & Reass* [*Benjamin Reass* of counsel; *Hugo Hirsh* and *Emanuel Newman* with him on the brief], for the respondent.

SMITH, J.:

The action is brought upon a fidelity bond issued by the defendant to insure the plaintiff against larceny and embezzlement by one

Walter H. Bartholomew, an employee of the plaintiff, who was the plaintiff's selling agent in Cuba and in the Isle of Pines. The contract was made on the 28th of February, 1917, and was for the period of one year from the 15th day of February, 1917. The plaintiff had a contract with said Bartholomew, whereby said Bartholomew should act as its selling agent, and account for the proceeds of the sales up to the cost price of the property sold and after certain expenses were deducted should pay to the plaintiff one-half of the net profits from the sale. It was provided in the contract that the title to the property should always remain with the plaintiff and that the proceeds of the sales thereof should be the property of the plaintiff, with the exception of one-half of the net profits thereof, as before specified.

The bond of indemnity was for the sum of $10,000, for which the plaintiff paid a premium of $100. In that bond it is provided that the statements made in writing by the plaintiff, relative to the employee, his conduct, duties of employment and accounts and the manner of conducting the business of the employer, and all statements in writing thereafter made by the employer relating to such matters should constitute the basis and form part of the contract, or any continuation or continuations thereof, as warranties. It was further agreed: " That subject to the obligations imposed by this bond on the employer, the performance of which shall be conditions precedent to the right on the part of the employer to recover under this bond, the company shall, at the expiration of three months next after proof of a pecuniary loss, as hereinafter mentioned, has been given to the company, reimburse the employer to the extent of " $10,000, for the pecuniary loss by reason of " any act of larceny or embezzlement upon the part of the employee." It was further provided that there should be no liability on this bond for any act of larceny or embezzlement committed by the employee after the employer's first becoming aware of any act which might be made the basis of any claim thereunder. Again, " That whenever the employer warrants by any of the statements made the basis of this bond or any continuation or continuations thereof, that the employer shall be required to do anything, any failure by the employer to do such thing, to the knowledge of any officer or director of the employer whether in collusion with the employee or not shall render this bond or any continuation or continuations thereof null and void as to any subsequent act of larceny or embezzlement committed by the employee." Again, " That if without previous notice to and consent of the company thereto in writing, the employer shall continue the employee in its employment, after having become aware of any act which

may be made the basis of any claim hereunder, or make any settlement with the employee for any loss hereunder, or do any act whereby the liability of the employee to him is changed in any material respect, this bond shall be null and void, both as to any existing or future liabilities."

In the application for the bond certain statements were made which were made warranties by said bond, and among them, in speaking of the agent is, *first*, " He will collect for goods delivered and will remit weekly. Q. For what length of time will you or any of your officers or directors permit him to have control of such amount ? A. A reasonable time after weekly statement. Q. Will he be permitted by you or any of your officers or directors to pay out of the cash in his control any amounts of your account? A. No. Q. Will he be required by you to deposit all funds coming into his possession in bank, if so, how often? A. No. All cash for our account will be forwarded weekly." Again, " Q. State whether he can endorse checks drawn to your order, and for what purpose. A. Yes. He will deposit same, and remit total weekly in N. Y. exchange." Again, " Q. To whom will he be required to account for his handlings of funds and securities? A. To Phillips-Jones Co., Inc. Q. How frequently? A. Weekly and monthly statements. Q. What means will you use to ascertain whether his accounts are correct? A. Books will be examined. Q. How frequently will they be examined? A. May be examined at any time, but must be examined by public accountant at least once every three months. Q. How often will his books and accounts be audited and verified with funds in hand or in bank, and by whom? A. At least once every three months." The application then reads: " It is agreed that the above answers shall be warranties and shall constitute the basis of and form part of the bond, or any continuation or continuations of the same that may be issued by the Fidelity and Deposit Company of Maryland to the undersigned upon the person above named. And it is agreed that the duties, powers and remuneration of the employee and the obligations of the employer as stated in the above warranties shall remain unchanged during the currency of this bond or any continuation or continuations thereof."

After the making of this bond and between some time in May and some time in October, 1917, the plaintiff shipped to Bartholomew merchandise of the value of about $28,000. No weekly or monthly statements were made by Bartholomew at any time during the continuance of the bond. There were statements of some kind made at different times, but Bartholomew himself swears: " I had not accounted in time as the contract called upon me to do, but

statements were made out that way when they did go in." There was, confessedly, no examination of the books of the company every three months by a public accountant as required by the statement in the application made a warranty by the bond itself. No money whatever was sent from Cuba to the plaintiff by Bartholomew, and no moneys were received by the plaintiff from Bartholomew until December or January, 1918, at which time, or about which time, Bartholomew paid to the plaintiff about $3,000.

Bartholomew was in this country in July, 1917, and saw the plaintiff, and the inference follows that the plaintiff was then informed as to the conditions existing in Cuba and the reasons why the moneys had not been forwarded. Upon September 16, 1917, Bartholomew wrote a long letter to the plaintiff, in which he complained that it was impossible to do business and pay all of the expenses from his fifty per cent of the profits, and said that he wanted the agreement changed so as to give him a larger per cent of the profits or some other arrangement made which would give him a living income. In that letter he said: "If you will refer to recapitulation sheets I recently sent your office you will see that on the gross business of $9,726.72, we made jointly $1,094.77 after taking a loss on three transactions due to wrong figuring on the selling price and a loss of about $300 on duty due to wrong weights at your end of the line. This is between 7 and 8% for your share out of which you have to take no other expenses except perhaps a small interest allowance at your bank to cover the extra time your accounts are outstanding as compared with the domestic business that you do. This confirms my contention that a profit of 25% on the goods is easily realizable, since hereafter there will be no losses due to miscalculation or wrong weights, as your boys are now taking care of these matters in good shape." He further said in that letter: "You have been very patient indeed and patience shall have its reward. You may expect a draft to follow this letter in a few days." No draft was ever sent. In response to that letter the plaintiff wrote to Bartholomew on the twenty-seventh of September. In that letter the plaintiff said: "I note carefully what you say about the difficulties you are up against regarding the profits and that you made a mistake in making the arrangements with us of giving us half the profit and that according to your figures, you will not be able to run the business profitably. You need have no anxiety in that respect. If you have it figured out that you cannot make anything by giving us half the profit we will take the matter up with you when you come here the next time and adjust it to your entire

satisfaction. The uppermost thing in our minds is that you make a success of this business and we will do all we possibly can to help you. If you cannot afford to give us any of the profit we will not take any and will let the matter stand for the present and take it up with you when you come here."

Even if Bartholomew did not reveal to the plaintiff the situation of the business, and that moneys had been received which had not been accounted for in July when he visited this country, it appears distinctly in the letter of September sixteenth, wherein Bartholomew admits a volume of business of upwards of $9,000, and a joint profit of over $1,000, that no moneys whatever had been up to that time paid over by Bartholomew to the plaintiff, and no moneys were thereafter paid, until about December, 1917, at which time and in January about $3,000 was paid. Here is shown full knowledge on the part of the plaintiff that Bartholomew had violated his contract, had refused to make reports, had refused to remit moneys, even as representing the sale price of the goods to say nothing of the profits he had received, and still no report was made thereof to the defendant and no claim for any shortage or any intimation given to the defendant that there was any trouble or default on the part of Bartholomew until July, 1918. That the plaintiff has violated its warranty is shown by its failure to require Bartholomew to make weekly and monthly statements and weekly remittances of moneys. It is further shown by the fact, which appears in the record, that there was no examination of the books of Bartholomew by a public accountant, as was required by the warranty. Compliance with these warranties was made a condition precedent to a recovery upon this policy or bond. Upon the record here it matters little as to where is the burden of proof. Even if the burden of proof be with the defendant, the defendant has shown that the warranties were breached, which fact is fatal to the plaintiff's recovery. In these contracts good faith is required on the part of the employer. For a premium of $100 the defendant has insured the fidelity of plaintiff's employee to the amount of $10,000. The insurer has a right to rely upon the good faith of the employer to require such accountancy and remittance as he warrants will be required during the term of the insurance. It is difficult to conceive of a case of a more flagrant abuse of the duty of the insured than is here presented. It is claimed that the plaintiff was writing for statements and remittances and could not get them, but in the application for the insurance the employer warrants that these reports and remittances will be sent. If the employer had notified the defendant, the defendant could easily have procured a public accountant, as could the employer himself, in Cuba to make an

examination of these books as was finally done. Utterly regardless of its warranties, however, and of the rights of the insurer, things were allowed to drift until the defalcation became a large one.

Other questions are raised which it is not necessary here to discuss. Under the terms of the bond I think the plaintiff was required to notify the defendant at least after the letter of September sixteenth of the failure of Bartholomew. to account and remit on the ground that his retention of those funds *might be made* the basis of the defendant's liability as, in fact, they were under the judgment appealed from. For failure to make this report the defendant would not be liable for any subsequent larcenies on behalf of Bartholomew.

Complaint is further made that there has been no proof that the amount for which a recovery has been had was lost through the larceny of Bartholomew prior to February 14, 1918, at which time the liability of the defendant ceased. The plaintiff complains that it is impossible to make better proof and that Bartholomew was in collusion with the defendant to an extent that he would not aid the plaintiff to make his proofs as to when these moneys were received by Bartholomew and not paid over. If the plaintiff, however, had fulfilled his warranties and required accountings and payments by its agent, or had required the monthly examination by the public accountant as warranted, the plaintiff would have had no such difficulty as that with which he is now confronted in making his proof. It is clear that the plaintiff has not proven that the larcenies of Bartholomew prior to February 14, 1918, amounted to the sum of $10,000.

Other questions are raised which it is not necessary here to discuss.

In view of the conclusion which I have reached the judgment must be reversed, with costs, and the complaint dismissed, with costs. The finding of fact that plaintiff had duly performed all conditions precedent to recovery is reversed.

Dowling, Laughlin, Page and Merrell, JJ., concur.

Judgment and order reversed, with costs, and the complaint dismissed, with costs.