## HARTFORD ACCIDENT & INDEMNITY CO. v. WICHITA LAUNDRY CO.
### (No. 12200.)

Court of Civil Appeals of Texas. Fort Worth. Nov. 2, 1929.

Supplemental Opinion, Nov. 9, 1929.

Cantey, Hanger & McMahon, of Fort Worth, for appellant.

Mathis & Caldwell, of Wichita Falls, for appellee.

DUNKLIN, J. The Hartford Accident & Indemnity Company has appealed from a judgment rendered against it in favor of the Wichita Laundry Company, plaintiff in the trial court, for the sum of $521.88, the amount of money which the plaintiff alleged was money belonging to it and which had been embezzled by its employee, Herman L. Porterfield, and for which plaintiff claimed the defendant company was liable on its indemnity bond, executed to the plaintiff to cover such loss.

The record shows that the plaintiff, a private corporation, was engaged in a laundry business in the city of Wichita Falls, and that Herman L. Porterfield was employed by it to solicit and gather up wearing apparel and other fabrics to be laundered, take them to plaintiff's establishment, and after they were laundered, to return the same to the respective owners, collect the laundering charges therefor, and turn over such collections to the plaintiff, less a commission of 20 per cent. thereof, which he was entitled to retain as compensation for his services.

The bond issued by the defendant company embodied its agreement to pay to plaintiff, who was designated as employer, "such pecuniary loss as the employer shall have sustained of money or other personal property (including money or other personal property for which the employer is responsible) through larceny or embezzlement committed by any employee or employees named upon the schedule attached hereto and made part hereof, in the position in the employer's service designated in said schedule during the period commencing with the respective dates set opposite the name of the employee or employees in said schedule and ending with the termination of the suretyship for any employee by his dismissal or retirement from the service of the employer, by the discovery of loss hereunder, or by cancellation by the employer or the surety."

In the schedule attached to the bond, Herman L. Porterfield was listed as laundry salesman, and $1,000 was set opposite his name as the maximum indemnity for loss through him.

The bond stipulated that the contract of insurance was subject to several conditions, all of which were embodied in the policy, including the following:

"4. The employer, immediately on becoming aware of any act giving rise to a claim hereunder, or facts indicating such acts, shall notify the surety at its Home Office, by telegraph and registered letter giving all known particulars, and, within sixty (60) days after discovery of any loss, shall file with the surety an itemized statement thereof under oath and shall produce for investigation such books, vouchers, and evidence in his possession as the surety may require.

"5. The employer, in the event of claim being made hereunder, shall, immediately on the surety's request, lay information before the proper authorities for the arrest of such employee, and shall afford every assistance (except pecuniary) which the surety may require in the apprehension and prosecution of said employee, and shall give every assistance which the surety may require in any civil action brought by it against the employee on account of such claim."

The provisions just quoted were pleaded specially by the defendant, and in connection therewith the defendant alleged that

plaintiff had failed to comply therewith, and by reason thereof plaintiff showed no right of recovery. Violations of other conditions of the bond were also pleaded, but they will not be noticed, since they are not involved in any of the assignments of error presented here.

The record shows that Porterfield failed to account to the plaintiff for laundry taken out from plaintiff's plant and delivered by him to different customers, and when such shortage in his account was discovered, he was discharged.

The trial of the case was before a jury, and the following are special issues submitted to them with their findings thereon:

"1. Was Herman L. Porterfield at the time he left the service of the laundry company indebted to the company? Answer: Yes.

"2. If you have answered the foregoing question 'no,' then you need not answer the following questions, but if you have answered 'yes,' then state in dollars and cents how much he was indebted. Answer: $521.88.

"3. Did the agent Porterfield embezzle any funds or personal property in his possession belonging to the laundry company. Answer: Yes.

"4. If you have answered the foregoing question 'no,' then you need not answer the following question, but if you have answered 'Yes,' then state how much of said funds or personal property were embezzled. Answer: $521.88.

"5. Did the laundry company furnish to the insurance company after the discovery of the loss, if any, an itemized statement of the loss under oath? Answer: Yes.

"6. Did the laundry company, after being requested to do so by the insurance company, lay information before the proper authorities for the arrest of the agent Porterfield? Answer: Yes.

"7. Was the agent Porterfield indebted to the laundry company when the bond was entered into on September 28, 1926, if so, how much? Answer: No.

"8. Did the defendant or its agent, within sixty days from the date of the alleged shortage, inform the plaintiff or its agents that they were not liable for any amount because of said alleged shortage? Answer: No."

In plaintiff's petition the claim of embezzlement was confined to the money which it was alleged Porterfield had collected as laundry charges; no claim being made that he had embezzled any of the laundry for which the collections were made. In the court's charge, the following definition was given: "By the term 'larceny' is meant theft or stealing from another, and by 'embezzlement' is meant the appropriation of money or property belonging to another entrusted too one's care."

But, as shown above, the issue of whether or not Porterfield was guilty of larceny was not submitted to the jury; embezzlement being the only issue involving dishonest conduct.

Error has been assigned to the refusal of the trial court to instruct a verdict in favor of the defendant. That assignment is based upon the proposition that the term "embezzlement," as used in the bond, should be construed as such a delinquency as would render Porterfield subject to conviction and punishment under the criminal statutes of this state; and that the evidence was wholly insufficient to show the commission of such an offense by Porterfield. This is the principal point stressed by appellant.

The testimony was ample to sustain plaintiff's contention that Porterfield failed to return any of the articles of laundry which he took out of plaintiff's plant for delivery to customers, and failed to return any collections therefor; but no evidence was introduced to show that he actually made such collections, aside from the circumstances just related and other testimony of fraudulent transactions in the manner of diverting some of the laundry from one schedule to another.

In Fidelity & Deposit Co. v. Central State Bank, 12 S.W.(2d) 611, 612, opinion by Justice Stanford of the Court of Civil Appeals at Waco, the following was said: "We do not think the contract of indemnity in this case makes it a prerequisite to a recovery that the offending party should be technically and criminally guilty of the offenses named in the bond. The embezzlement of the notes or the proceeds of said notes, though, perhaps, not embezzlement in the sense that a criminal prosecution could have been successfully maintained, yet was such embezzlement as is comprehended by the contract of insurance herein."

And the following is quoted from the syllabus of the opinion in Mitchell Grain & Supply Co. v. Maryland Casualty Co. of Baltimore, by the Supreme Court of Kansas, 108 Kan. 375, 195 P. 978, 16 A. L. R. 1488: "In a bond insuring an employer against losses sustained by reason of conduct of an employee constituting embezzlement the word 'embezzlement' is to be construed broadly in its general and popular sense, rather than in a narrow and technical spirit with specific reference to the local statute; and a loss occasioned by the employee's speculating on the market in the name of the employer, but without his knowledge or consent, is within the protection of the bond."

And in a note to that decision, beginning on page 1493 of 16 A. L. R., many decisions of other states are cited of like effect. But in

the same note the decisions of many other states are cited holding that in an indemnity bond requirng the surety to answer for the conduct of a principal amounting to larceny or embezzlement covers only such acts as constitute one of those crimes within the meaning of the Penal Code.

By article 1534 of our Penal Code, embezzlement is made an offense for which the offender may be punished as for theft, yet neither in that article nor in any other penal statute of this state is the term "embezzlement" defined; the meaning intended necessarily being such as is understood in common parlance, like any other word in common use. In Webster's New International Dictionary occurs the following definitions:

"Embezzle (v. t.) To appropriate fraudulently to one's own use, as property entrusted to one's care; to apply to one's private uses by a breach of trust; as, to embezzle money held in trust.

"Embezzlement (n.) Act of embezzling; the fraudulent appropriation of property by a person to whom it has been intrusted, as of an employer's money by his clerk, or of public funds by the officer having them in charge. Embezzlement differs from larceny in that in the former case the property is already in the wrongdoer's possession. Embezzlement is now indictable by statute; but under the technical rules of the English Common Law it was not a criminal offense, because the possession by the wrongdoer was lawfully acquired. * * *"

In 20 Corpus Juris, 407, occurs the following: "Embezzlement may be defined broadly as the fraudulent appropriation of another's property by a person to whom it has been intrusted, or into whose hands it has lawfully come; and this or substantially similar language is used in practically all the cases where a definition of the offense has been attempted."

In Hamer v. State, 60 Tex. Cr. R. 341, 131 S. W. 813, 817, the following definition of "embezzlement" is quoted with approval from Leonard v. State, 7 Tex. App. 444: "What is embezzlement? A fraudulent appropriation of the property of another by a person to whom it has been intrusted."

Both of those decisions were by our Court of Criminal Appeals. Furthermore, as noted already, the trial court in his charge to the jury defined "embezzlement" as an "appropriation of money or property belonging to another intrusted to one's care," and defendant presented no exception to that definition.

It thus appears that the term "embezzlement," as used in our Criminal Statutes and as employed in common parlance, has the same meaning, and for that reason we are unable to perceive any necessity for a rule of interpretation in this state, to the effect that when the term "embezzlement" is used in a bond of indemnity, such as the one here involved, a liberal interpretation of its meaning should be adopted to accomplish its general purpose of indemnity, rather than a strict technical interpretation to be employed in an indictment for crime. It is possible that the penal statutes of other states defining "embezzlement" may be different from our statutes and that the decisions adopting that rule of construction may have been by the courts of such states. Whether that be true or not does not appear from any of those decisions which we have read. The fact that in a criminal prosecution for embezzlement the guilt of the accused must be established beyond a reasonable doubt, while in a civil action to recover for such embezzlement only a preponderance of the evidence in plaintiff's favor is required in order to establish his claim, does not make a difference in the elements of embezzlement in the two different instances, but goes only to a difference in the quantum of proof, required to establish it.

It is also a familiar rule that even in a criminal prosecution the guilt of the accused may be established by circumstantial evidence. Indeed, circumstantial evidence is the only means of proof of a fraudulent intent, which is one of the essential ingredients of the offense, in the absence of any evidence in the nature of a confession by the accused.

■■ Evidence offered by the plaintiff in this case was to the effect that Porterfield while in its employment took out laundry from its establishment for delivery to its customers, as it was his duty to do; that it was his duty to collect the charges therefor and turn over such collections to plaintiff, less his commissions, or else return the laundry if undelivered; that he failed to return such laundry and also failed to return any collections made therefor; and that he failed to report his inability to make such collections. Those facts, and other circumstances tending to show that Porterfield had made some changes in tickets on some of the parcels intrusted to him for the purpose of defrauding plaintiff, were sufficient to support the further finding that he collected the charges due for such laundry and fraudulently appropriated to his own use plaintiff's portion thereof. Plaintiff was not required to prove such fact beyond a reasonable doubt as in a criminal prosecution; it being sufficient if they were proven by a proponderance of the evidence. And since it does not appear that it failed to discharge that burden, all assignments of error presenting an alleged failure of proof of embezzlement are overruled.

It is proper to note in this connection that there was no finding by the jury, nor basis in the evidence therefor, that Porterfield was guilty of larceny, since he came into possession of the laundry with plaintiff's knowledge and consent; nor was that issue submitted to the jury, or requested to be submitted.

■ The evidence was also sufficient to support the findings of the jury in answer to issues Nos. 5 and 6, shown above, to the effect that plaintiff furnished to the defendant a verified statement of the loss sustained through Porterfield after discovery of the loss; and that after being requested so to do by the defendant it laid information before the proper authorities for the arrest of Porterfield, all as required by the terms of the policy. G. W. Pond, vice president of plaintiff corporation, testified specifically to the mailing to defendant of such a sworn statement, and also that he went to the county attorney, exhibited to him plaintiff's books, which showed that Porterfield had not turned into plaintiff any collections on laundry delivered to him. Although the witness further testified that he could not swear that Porterfield actually collected the money, yet that was not necessary, since, as said in Evans v. State, 40 Tex. Cr. R. 54, 48 S. W. 194: "We hold this to be a correct legal principle, applicable to this character of case: That when the state has shown by competent evidence the receipt of money or other property by the carrier, to be carried and disposed of in a particular way, and the state shows that it was not delivered and disposed of in the way and manner as agreed upon, and this is established beyond a reasonable doubt, if the party intrusted with the property has made some other dispositon of the property, not criminal, to relieve himself of conversion he must introduce proof of such disposition."

■■ The amount of Porterfield's shortage in his accounts was shown from plaintiff's books, and the jury's findings of his defalcations was based on that showing. Those accounts showed that at the time the bond of indemnity was executed Porterfield owed plaintiff, for collections made by him for laundry which he delivered to plaintiff's customers, the sum of $355.09. After the bond was executed, his account was continued with laundry taken out for delivery and credited with collections made thereon and turned over to plaintiff, with no showing as to whether any of those collections were made on laundry delivered by Porterfield before the bond was executed, and the judgment rendered was for the balance due as shown by the account on the date of Porterfield's discharge from plaintiff's service. Necessarily, the balance against him as shown in the account at the time the bond was executed was taken into consideration in determining the amount for which judgment was rendered. If he did not owe that balance, as found by the jury, then it is plain that he did not embezzle the sum of $521.88, as further found. Furthermore, even if at the time the bond was executed he had not paid the balance against him, then shown in the account, still the amount of embezzlement found by the jury cannot be sustained, since the fact remains that, in effect, the defendant was held chargeable therefor; and erroneously so. It is elementary that the bond did not bind the surety for misfeasance of Porterfield occurring before the execution of its bond; and the conclusion we have reached that collections made by Porterfield after the execution of the bond could not, as against the surety company, be credited to cover defalcations occurring before the bond was executed, is supported by such authorities as Sinclair & Co. v. National Surety Co., 132 Iowa, 549, 107 N. W. 184; Dorsey v. Fidelity & Casualty Co. of N. Y., 98 Ga. 456, 25 S. E. 521; Adams Co. v. Western Surety Co., 35 S. D. 194, 151 N. W. 890; Western Indemnity Co. v. Free & Accepted Masons of Texas (Tex. Com. App.) 268 S. W. 728; Los Angeles Athletic Club v. U. S. Fidelity & Guaranty Co., 41 Cal. App. 439, 183 P. 174; Phillips-Jones Co. v. Fidelity & Dep. Co. of Maryland, 200 App. Div. 629, 193 N. Y. S. 642.

For the reasons stated, the judgment of the trial court will be reversed and remanded; unless appellee shall within ten days from this date file a remittitur of the amount which the record shows Porterfield owed it on the date the bond was executed. If such remittitur be filed within that period, then the judgment will be so reformed as to credit that sum on the amount of the judgment of the trial court, and the judgment will be then affirmed for the balance remaining, and reversed as to the excess over such balance.

### Supplemental Opinion.

The remittitur of $355.09, suggested in the opinion on original hearing, having been filed by the appellee, the judgment of the trial court is so reformed as to limit the amount of appellee's recovery to the sum of $166.79, with interest thereon at the rate of 6 per cent. per annum from the 12th day of October, 1929, the date of the judgment of the trial court, together with the costs incurred in the trial court, and as so reformed will be affirmed.

The costs of appeal will be taxed against the appellee.